DECISION
Plaintiff appeals Defendant's Notice of Deficiency Assessment, dated June 23, 2009, for tax year 2006, disallowing Plaintiff's claimed gambling losses.
The parties submitted stipulated facts, stipulated exhibits 1 through 20 and cross motions for summary judgment. Oral argument was not requested.
 I. STATEMENT OF FACTS
For tax year 2006, Plaintiff reported on her timely filed Oregon state income tax return "gambling winnings of $130,581 and an itemized deduction for gambling losses of that same amount." (Stip Fact 1.) The claimed gambling winnings and itemized deduction for gambling losses matched the amount stated on Forms W-2G received from Spirit Mountain Casino (Spirit Mountain). (Stip Fact 2.) After being notified that Defendant was auditing her 2006 income tax return, Plaintiff provided "a copy of tracking card information * * * received from Spirit Mountain regarding [P]laintiff's slot machine play at Spirit Mountain during 2006." (Stip Fact 4.) The Spirit Mountain Casino letter, dated February 27, 2009, stated:
 "According to our records, for the period of January 1, 2006 to December 31, 2006[,] your slot play activity was:

"Estimated Total Coin In: $288,286.15
"Estimated Total Coin Out: $235,730.20
 *Page 2 
"Estimated Loss: $52,555.95

 "This does not include any hand paid jackpots. If you had any hand paid jackpots, they would be reflected in the IRS form W2-G received with the jackpots.
 "* * * * *
 "* * *. These figures do not constitute a definite accounting of gaming activity nor do they denote total winnings or losses (only that which was accumulated while using your Coyote Club card). * * *."
(Stip Ex 5 at 1.)
"Plaintiff also played slot machines at Chinook Winds Casino Resort ([Chinook Winds]) during 2006." (Stip Fact 7.) The Chinook Winds letter, dated March 9, 2009, stated:
 "According to our records, for the period of January 1, 2006[,] through December 31, 2006[,] the information associated with your slot play when you used your Winners Circle card, is:

"Coin In * * * $4,619.15
"Coin Out * * * $3,254.45

 "The result of your Slot play is an estimated loss of: $1,364.70
 "This total reflects Winners Circle Member's slot play only. Your hand paid jackpots are reflected in the IRS form W2-G you received with the jackpot.
 "Chinook Winds Casino is able to track play while the club members card is inserted into the slot machine. These released figures do not constitute a definite accounting of any other gaming activity.
 "* * * * *."
(Stip Ex 7.) Even though the Chinook Winds letter stated that Plaintiff received an IRS form W2-G from Chinook Winds, the parties agree that Plaintiff only received Forms W2-G from Spirit Mountain. (Stip Fact 2.)
 "Plaintiff sometimes played slot machines during 2006 without using her Spirit Mountain and Chinook Winds tracking cards. Plaintiff received gambling winnings in 2006 in addition to the winnings reported on Forms W-2G and the `coin-out' amounts listed in the Spirit Mountain and Chinook Winds tracking card *Page 3 
reports. Plaintiff also incurred gambling losses in 2006 in addition to the `coin-in' amounts listed in the tracking card reports."
(Stip Fact 8.)
Based on the information stated in the two casino letters, Defendant increased Plaintiff's 2006 "gambling winnings an additional $238,984" for a total gambling winnings of $369,565, and increased Plaintiff's gambling losses to $292,905. (Stip Facts 10, 11; Stip Ex 8 at 4.)
"Plaintiff did not keep a contemporaneous log, diary, or other separate list or record of her gambling winnings and losses during 2006. Plaintiff's banks, credit card companies, and financial services companies kept and maintained records of plaintiff's financial activities during 2006." (Stip Fact 5.) Plaintiff alleges that she "maintained an electronic Listing of 2006 Losses; her form of a `gambler's diary;' all of which is additionally supported by independent, third party data. Plaintiff retained bank records that evidence Ms. Perron's continued losses." (Ptf's Mot for Summ J at 2.) A document entitled "electronic Listing of 2006 Losses" is not among the stipulated exhibits provided to the court.
"Taxpayer prepared the financial worksheet attached as Exhibit 20 after commencement of the audit, relying on the financial records contained in Exhibits 10 to 19." (Stip Fact 14.) None of the amounts listed in the various columns of Stipulated Exhibit 20 were cross referenced to Stipulated Exhibits 10 through 19. (Stip Ex 20.) There was no explanation attached to the worksheet to define the abbreviated letters, symbols and amounts, e.g., "SM," "Resv pmt," "V$40 fee," or identify their significance. (Id.) The worksheet omitted a total for the column labeled "SM." (Id. at 8.) Some numbers on the worksheet were followed by a symbol ("-") and other numbers did not have the symbol ("-") after them. (Id. at 1-8.) The worksheet showed an amount of "$49,589.30-" in a column titled "NET win/loss" without explaining the significance of that amount. (Id. at 8.) The amounts in the "NET win/loss" column appear to be the total of *Page 4 
amounts listed in four columns labeled "BANK-US CHECKNG"; "BANK-1ST HAWAIIAN"; "CREDIT CARDS"; and "AG EDW CHECK." (Id.) There is no explanation why the column titled SM was not included in the total of the other four columns. There was no explanation if fees listed under "COMMENTS" were claimed as gambling losses. (Id.) For some entries, the dates that appeared in the column labeled "COMMENTS" are different than the date on the same line in the column labeled "DATE." (Id.)
"Plaintiff's estimate of the amount of her gambling winnings and losses for 2006 is based on the Stipulated Exhibits." (Stip Fact 15.) Plaintiff's Motion for Summary Judgment, filed March 4, 2011, and Plaintiff's Reply in support of Motion for Summary Judgment and in Response to Defendant's Motion for Summary Judgment did not state the amount of Plaintiff's gambling winnings and losses for 2006. If the court were to grant Plaintiff's Motion for Summary Judgment, the court would be granting an unspecified requested relief.
Plaintiff alleges that the "Cohan rule provides relief to taxpayers attempting to substantiate a deduction when there is doubt as to the exact amount of a deduction." (Ptf's Mot for Summ J at 6.) Defendant states that "the Cohan rule generally may not be used to permit additional, unsubstantiated losses when there is no basis to estimate the amount of additional, unsubstantiated winnings." (Def's Resp to Ptf's Mot for Summ J at 12.)
 II. ANALYSIS
"[G]ross income means all income from whatever source derived * * *" including gambling winnings. Internal Revenue Code (IRC) § 61(a)[1]; McClanahan v. United States,292 F2d 630, 631-32 (5th Cir), cert den, 368 US 913 (1961). Oregon has adopted the federal *Page 5 
definition of taxable income, subject to exceptions not relevant to this case. ORS 316.048.[2] In computing taxable income, "[l]osses from wagering transactions shall be allowed [as a deduction by a taxpayer] only to the extent of the gains from such transactions." IRC § 165(d). For individuals who are not engaged in the trade or business of gambling, gambling losses must be claimed as itemized deduction. IRC § 63(a). On her filed federal income tax return, Plaintiff limited her losses from gambling that she claimed as itemized deductions to her reported income from gambling. (Stip Fact 1.)
A taxpayer has the burden of providing substantiation for deductions, which "are a matter of legislative grace[.]"Hartsock v. Commissioner (Hartsock), 92 TCM (CCH) 297, 299, WL 2734238 at *3 (2006), citing Schooler v. Commissioner(Schooler), 68 TC 867, 869 (1977) and INDOPCO,Inc. v. Commissioner, 503 US 79, 84 (1992). With respect to the reporting of gambling winnings and gambling losses, the Internal Revenue Service issued general guidelines in Revenue Procedure 77-29, 1977-2 Cumulative Bulletin 538. The Revenue Procedure outlines a taxpayer's "responsibility for maintaining adequate records in support of winnings and losses." Rev Proc 77-29, 1977-2 CB 538, at Section 1.
 "Under Section 6001 of the Code, taxpayers must keep records necessary to verify items reported on their income tax returns. Records supporting items on a tax return should be retained until the statute of limitations on that return expires.
 "* * * * *
 "An accurate diary or similar record regularly maintained by the taxpayer, supplemented by verifiable documentation will usually be acceptable evidence for substantiation of wagering winnings and losses. In general, the diary should contain at least the following information:
 1) Date and type of specific wager or wagering activity;
 2) Name of gambling establishment;
 3) Address or location of gambling establishment; *Page 6 
 4) Names(s) of other person(s) (if any) present with taxpayer at gambling establishment; and
 5) Amount(s) won or lost.
 "Verifiable documentation for gambling transactions includes but is not limited to Forms, W-2G; Forms 5754, Statement by Person Receiving Gambling Winnings; wagering tickets, canceled checks, credit records, bank withdrawals, and statements of actual winnings or payment slips provided to the taxpayer by the gambling establishment.
 "* * * * *."
Id at Sections 2-3. (Emphasis added). In a recent decision, the U.S. Tax Court reminded the petitioner that "[n]o valid reason exists for taxpayers engaged in wagering transactions not to maintain a contemporaneous gambling diary or gambling log."LaPlante v. Commissioner, 98 TCM (CCH) 305, WL 3152789 at *6 (2009), citing Schooler, 68TC at 870-71.
In such cases, the taxpayer has the "burden of showing that he is entitled to a particular deduction * * *." Betson v.Commissioner, 802 F2d 365, 367 (9th Cir 1986). The Ninth Circuit Court of Appeals has clearly stated that "[t]he question of the amount of [gambling] losses sustained by a taxpayer is a question of fact to be determined from the facts of each case, established by the taxpayer's evidence, and the credibility of the taxpayer and supporting witnesses." Norgaard v. Commissioner (Norgaard),939 F2d 874, 878 (9th Cir 1991), citing Green v.Commissioner, 66 TC 538, 545-46 (1976).
Most important, "[t]he credibility of the taxpayer is acrucial factor."Id. at 878 (emphasis added) (citation omitted). A taxpayer's evidence can be corroborated by "forthright, credible and candid testimony." Id. at 878 n 3, citing Wolkomir v.Commissioner, 40 TCM (CCH) 1078, 1079-1080 (1980); see alsoDrews v. Commissioner, 25 TC 1354, 1355 (1956) (allowing partial deduction based on taxpayer's credible testimony concerning estimate of losses *Page 7 
without records); Taormina v. Commissioner,35 TCM (CCH) 400, 402 (1976) (allowing estimated partial deduction based on losing tickets and taxpayer's credible testimony).
The court now turns to the evidence offered by Plaintiff to support her claimed, but not quantified gambling losses. Plaintiff alleges that the documentation she submitted to substantiate her claimed recreational gambling losses meets the general IRS guidelines. Plaintiff alleges that she summarized her evidence, which included check copies, bank statements, and cash withdrawals from automatic teller machines (ATM). (Stip Exs 10-20.) Courts have questioned "the reliability of the self-serving and uncorroborated workpapers" produced to substantiate gambling losses.Hartsock, 92 TCM (CCH) at 300, WL 2734238 at *4. Plaintiff attempted to "corroborate" her summary worksheet, Stipulated Exhibit 20, by including copies of financial institution statements. However, those financial statements were not cross-referenced to the summary worksheet. (Stip Ex 20.) Further, statements listing ATM credit card withdrawals prove that money was withdrawn, but do not prove that the money was spent and lost at that particular casino or other establishment offering gambling. Those financial statements in and of themselves are not sufficient to meet the IRS requirement of a diary or log.
To prove her gambling losses, Plaintiff relied on a summary of information that she represents was taken from her financial records. (Id.) Unfortunately, as detailed in the Statement of Facts, Stipulated Exhibit 20 raises many questions that were not answered or explained. One of the most important concerns is the lack of information showing that the amounts listed in the various columns on Stipulated Exhibit 20 were not included in the amounts reported by the casino as "cash in." Plaintiff did not identify the source(s) of the "cash in" reported by the casinos. *Page 8 
Evidence should meet the standards of being clear, complete and self-explanatory, especially when the documentary evidence is not supplemented by testimony. To explain or supplement the summary worksheet (Id.), Plaintiff could have submitted a 2006 calendar, noting gambling days, and cross-referenced all other exhibits to the summary worksheet. Plaintiff could have testified. Plaintiff's Stipulated Exhibit 20 by itself does not meet the requisite standard of proof.
Taxpayers are required to report gambling winnings as "other income" to arrive at adjusted gross income on their federal income tax returns. Gambling losses are reported as itemized deductions on Schedule A, Other Miscellaneous Deductions. Each item, gambling winnings and gambling losses, must be separately reported. On her state income tax return, Plaintiff only listed as other income the gambling winnings reported on 48 W-2G forms issued by one casino. (Stip Fact 1; Stip Ex 2.) Plaintiff admits that she received gambling winnings in addition to those reported on Form W-2Gs; however, the amounts of those winnings were not reported on Plaintiff's tax returns nor quantified for the court. (Stip Fact 8.) Plaintiff's gambling winnings in excess of the Forms W-2G were not reported on Plaintiff's summary worksheet. (Stip Ex 20.) Plaintiff did not testify. Plaintiff's lack of testimony and documentation lead the court to conclude that Plaintiff does not know the total amount of her gambling winnings.
Plaintiff alleges that the "Cohan rule provides relief to taxpayers attempting to substantiate deduction when there is doubt as to the exact amount of a deduction." (Ptf's Mot for Summ J at 6.) In Norgaard, the Ninth Circuit stated that "[i]n order to qualify for the estimation treatment under Cohan, the taxpayer must establish that he is entitled to some deduction."939 F2d at 879, citing Edelson v. Commissioner,829 F2d 828, 831 (9th Cir 1987). The Court went on to state that: *Page 9 
 "[h]ad the [plaintiffs] provided a credible evidentiary basis from which the tax court could have estimated, first, their unquantified, unreported winnings, and second, their losses, they could have benefited from application of the rule of Cohan. * * * However, the rule of Cohan cannot be applied in the presence of unquantified, unreported winnings unless both winnings and losses are estimated."
Id. Plaintiff admits that she had gambling winnings in excess of the amounts reported on Forms W-2G. (Stip Fact 8.) Plaintiff failed to quantify and report all her winnings. Plaintiff failed to specify for the court her gambling losses. Because Plaintiff failed to quantify and report her gambling winnings and estimate both her winnings and losses, the Cohan rule is not applicable to the facts of this case.
 III. CONCLUSION
After careful review of the evidence and applicable law, the court concludes that Plaintiff failed to carry her burden of proof. There is inconclusive evidence to support Plaintiff's assertion that her gambling losses exceeded her gambling winnings. Plaintiff is allowed the gambling loss deductions computed by Defendant for tax year 2006. Defendant's computation of Plaintiff's gambling income for tax year 2006 is accepted. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this ___ day of June 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on June 6, 2011. The Court filed and entered this documenton June 6, 2011.
[1] All references to the IRC and accompanying regulations are to the 1986 Code, and include updates applicable to tax year 2006.
[2] All references the Oregon Revised Statutes (ORS) are to 2005.
 *Page 1